[No. 21640. Department One. April 22, 1929.]

KENDRICK MERCANTILE COMPANY, *Appellant,* v. FIRST NATIONAL BANK OF COLVILLE *et al., Respondents.*[1]

*Newton Henton,* for appellant.

*W. H. Jackson,* for respondents.

BEALS, J.—The facts giving rise to this litigation are extremely complicated. There is, however, little

[1]Reported in 276 Pac. 559.

dispute concerning the facts and a comparatively brief statement thereof will be sufficient.

January 6, 1925, defendants Waddell, being the owners of timber lands in Stevens county, entered into a written contract with Charles and John Palm whereby the Palms were to purchase the lands for eleven thousand dollars, payable in installments, the last of which to become due May 1, 1926. At approximately the same time, Mr. Waddell agreed that the Palms might remove the timber upon paying a specified amount as stumpage for all logs and cedar poles so removed, the Palms at the same time executing a chattel mortgage to the Waddells covering all lumber to be manufactured from timber cut from the property and all cedar poles removed therefrom. This mortgage seems to have been given to secure payment of notes given by the Palms in connection with their original contract of purchase of the land, and provided for a release of the mortgage upon payment to the Waddells of the stumpage called for in the agreement which permitted the removal of the timber.

The Palms, being without means and expecting to pay for the land and timber out of the profits of the operation, entered into a contract with the Bert West Lumber Company (hereinafter referred to as the Lumber Co.), whereby that corporation agreed to purchase the lumber to be manufactured from the timber. The Palms also entered into a contract with B. J. Carney & Company (hereinafter referred to as Carney & Co.), by the terms of which that corporation agreed to purchase the cedar poles to be cut from the land. In both of these contracts, it was provided that all advances and payments made by the respective purchasers therein named should be by them made to the defendant First National Bank of Colville (hereinafter re-

ferred to as the Bank), as joint agent of the Waddells and of the Palms.

The Palms forthwith commenced operations, both the Lumber Co. and Carney & Co. making advances to the bank for the purpose of providing money with which the Palms could pay their expenses. The Palms, thus starting on the wrong side of the ledger, were never able to work themselves out of the red; and after paying the cost of production of lumber and poles, there was nothing left to apply upon the stumpage due Mr. Waddell. In December, 1925, the Palms executed to the Waddells a second chattel mortgage, providing for an increase in the amount of stumpage which the Palms were thereafter to pay, the increase to apply on past due stumpage. In other words, the Palms, having been under the first arrangement unable to pay Mr. Waddell anything on account of stumpage, agreed that thereafter they would pay him a larger amount than they had been obligated to pay him under the first agreement.

The inevitable occurred. By April, 1926, the entire proposition was in almost inextricable confusion. Mr. Waddell had received nothing. There were labor claims against the lumber which had been manufactured and which was ready for delivery to the Lumber Co. The Palms were indebted to plaintiff in excess of fifteen hundred dollars for supplies furnished them for use in their operations. All parties agreed that drastic measures must be taken, if the operation was not to result in a considerable loss to all concerned. Representatives of all interested parties met, and the Palms, who were evidently honest and conscientious in desiring to pay their creditors, offered to continue to work, without receiving any of the proceeds, until their debts should be paid.

Plaintiff agreed to continue furnishing supplies to

the Palms, without which supplies they could not proceed, and also to advance money which might be necessary to pay labor. The labor claimants released their right to lien the cut lumber, whereupon the Lumber Co. paid a balance which was due on account of the lumber which had been cut. The Palms agreed to continue work, without compensation, getting out poles to be sold to Carney & Co., plaintiff to pay the cost of production and transportation of the poles to the railroad; Carney & Co. to pay the stumpage due Mr. Waddell, and after deduction of that item and other items which it was to receive, to pay· the balance to appellant, which would prorate what it should receive from Carney & Co. between the men who had released their right to lien the lumber produced from trees they had cut and itself, until these respective claims should be liquidated. The amounts due all parties respectively were definitely agreed upon, and concerning the same there is no dispute.

On May 11, 1926, the following letter, which is in evidence, was written to plaintiff by defendants:

"The First National Bank
"Mr. F. M. Turner,                    Colville, Wash.
  "Northport, Wash.                          May 11, 1926.
"Dear Sir: Since receiving your letter of May 5th, in regard to the Palm Brothers matter, I have gone into the matter of costs with various old operators and I am of the opinion that I will not be getting anywhere toward recovering what I have in the deal in any less stumpage allowance than that submitted by Mr. Spedden at the time he was in Northport; that is, of an advance on the railroad as follows:

"9c per foot for 8″-45
"8½c per foot for 8″-35 and 40
"6c per foot for 7″-35
"5¼c per foot for 7″-30
"3c per foot for 6″-30 and 25

"The deal has gotten to a place where I have to figure very closely on both the cedar and the white

pine in order to get anything and pole contractors tell me that the above figures leave a very good margin over what this work can be contracted for to reimburse Mr. Slauson in the way of collections on the accounts owing to him and to the labor.

"The advances mentioned above are to be made by the Carney Pole Company and handled by Mr. Slauson to cover expense of placing such poles on the railroad right-of-way, with all claims excepting stumpage paid to that point. If Mr. Slauson cannot see his way clear to handle it on this basis, I shall be pleased to know it at once, as I must then get my affairs with the Palm Brothers in the best shape for the protection of my interests.                Very truly yours,
                                    "H. Waddell,
                                        "President."

After the writing of this letter, a slight modification of the stumpage rate was agreed upon, and the Palms proceeded to cut poles, appellant furnishing supplies and paying the labor as it had agreed to do. A few poles were delivered to Carney & Co., who paid plaintiff the agreed price thereof. June 28, Carney & Co. paid plaintiff five hundred dollars as an advance on poles which were then in the woods, and Carney & Co. took out insurance covering poles cut and to be cut, charging the premiums to the Palm account. During the month of July, 1926, the entire operation was terminated by a forest fire which burned over the land and also destroyed all or nearly all of the cut poles upon which the advance to plaintiff had already been made. Carney & Co. collected the insurance money, the policies having been made payable to it, and credited the Palms with the contract price of the poles destroyed, less the cost of transporting the same from the woods, where the poles were burned, to its plant. At this time, there was unquestionably due to the Waddells as stumpage, under the last agreement made between all the parties, whereby plaintiff

was to take charge of the operations, the sum of $948.57½. Plaintiff claimed as due it the sum of $1,004.64, upon which it credited the $500 advanced by Carney & Co. Carney & Co., after making certain disbursements out of this fund, the right to make which plaintiff does not dispute, paid the balance remaining, in the sum of $1,222.86, to defendant bank.

Plaintiff, believing that it should have received the balance due it in the sum of $504.64 out of this fund which was paid to defendants, brought this suit, praying judgment for that amount; claiming that, under its agreement with defendants, Carney & Co. should have paid to plaintiff the amount it claims, plaintiff making no contention that it had any agreement with Carney & Co., but alleging that its agreement was with defendants.

The trial resulted in the denial of any relief to plaintiff, and from a judgment dismissing the action, plaintiff appeals.

Appellant contends that the court erred in making findings in favor of respondents and in refusing to make certain findings requested by appellant. No error is assigned on the admission or rejection of evidence, and the question before us is, Does the evidence support the judgment?

The trial court found that Carney & Co. insured the poles because the chattel mortgages from Palm brothers to respondents Waddell called for such insurance. It is altogether possible that Carney & Co. would have taken out insurance on the poles for the reason assigned by the trial court, had no other reason existed for doing so; but it appears from the evidence that the primary motive of Carney & Co. in taking out this insurance was to protect itself against loss, the protection which respondents might receive under the policies being incidental. The total amount of

insurance collected by Carney & Co. was $3,629.65, out of which money Carney & Co. first balanced its own account with the operation, including the five hundred dollars it had advanced to plaintiff, the balance of the fund being paid to respondents as above stated. The trial court found that, at the time of the fire, there was due and owing to respondents Waddell, by way of stumpage on poles produced prior to the time appellant assumed management of the work, the sum of $1,056.39½, and the sum of $948.57½ by way of stumpage on account of poles cut after appellant was in charge. There was also a small sum due Mr. Waddell for forty-three poles for which Palm brothers had received payment from appellant.

The trial court was of the opinion that the chattel mortgages executed from the Palms to respondents Waddell vested these respondents with a claim to the entire proceeds of the insurance policies superior to any claim thereto on the part of appellant. In this, we believe the trial court erred. It seems clear that, whatever the legal effect of the chattel mortgages might be under other circumstances, respondents cannot now assert, by virtue thereof, a claim on the proceeds of the insurance policies on account of stumpage on poles cut prior to the agreement under which appellant took charge of the work, superior to appellant's right. The insurance policies were taken out by Carney & Co. after the date appellant took charge, and the premiums were paid by that company to be charged to the proceeds of poles cut by appellant. The policies were, therefore, to be paid for out of the results of appellant's operations. Respondents should have received, out of the proceeds of the insurance policies, the full amount due respondents Waddell on account of stumpage on the poles cut under appellant's management, in the sum of $948.57½.

We hold appellant's claim on the fund comes next to the amount due respondents for this stumpage, and that appellant should have received the balance of the $1,222.86 which was paid to respondents by Carney & Co.

The judgment appealed from is reversed, with directions to enter a judgment in accordance with this opinion.

MITCHELL, C. J., FULLERTON, TOLMAN, and HOLCOMB, JJ., concur.